ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ALDO BRITO RODRÍGUEZ<br><br>Parte Recurrente<br><br>v.<br><br>COMISIÓN APELATIVA DEL SERVICIO PÚBLICO, representada por Laudelino Mulero Clas, en carácter oficial como presidente<br><br>Parte Recurrida | KLRA202400113 | *Revisión Judicial,* procedente de la Comisión Apelativa del Servicio Público<br><br><br><br>Sobre:<br>Revisión por falta de jurisdicción y otras violaciones al debido proceso |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de marzo de 2024.

Compareció ante este Tribunal la parte recurrente, Lcdo. Aldo Brito Rodríguez (en adelante, "licenciado Brito" o "Recurrente"), mediante recurso de revisión judicial presentado el 4 de marzo de 2024. Nos solicitó la revocación de la determinación tomada por la Comisión Apelativa del Servicio Público (en adelante, "CASP" o "Recurrida") el 1 de febrero de 2024, consistente en la suspensión definitiva de empleo y sueldo del licenciado Brito de diez (10) días laborables.

Por los fundamentos que expondremos a continuación, se *desestima* el recurso por falta de jurisdicción, toda vez que el Recurrente no ha agotado todos los remedios administrativos disponibles ante la CASP.

### I.

El licenciado Brito es oficial examinador en el servicio de carrera en la CASP desde el año 2011 y labora en el servicio público hace 17 años. Actualmente, ocupa el puesto de "Oficial Examinador Licenciado" y desde

el 1 de enero de 2021, es el único empleado de la CASP dentro de dicha clasificación. Lo anterior implica que la División Legal de dicha entidad se compone de dos (2) empleados: una Directora y el Recurrente. Allá para el mes de enero de 2023, la CASP adoptó unas normas de ejecución interna de la División Legal de dicha entidad administrativa. La misma se compone de métricas de productividad dirigidas a atender las necesidades operaciones de la Recurrida y cumplir con su deber ministerial de adjudicar las controversias traídas ante su atención de una manera justa, rápida y diligente.

El 21 de julio de 2023, la CASP le notificó al licenciado Brito su intención de imponerle una amonestación formal consistente en una suspensión definitiva de empleo y sueldo de diez (10) días laborables, por no cumplir con los parámetros de productividad establecidos por la Recurrida para los oficiales examinadores de la División Legal. Allí, se le hizo referencia a que el Informe de Productividad suscrito por la Directora de la División Legal, Lcda. Alejandra M. Rivera Rodríguez, el Recurrente no cumplió con la expectativa de realizar su trabajo con precisión y exactitud dentro del tiempo requerido e incumplió con los términos de entrega y fechas límites. En la aludida comunicación, se le indicó que incurrió en tres (3) ofensas: (1) desempeño deficiente, desidia o retraso en seguir las instrucciones del supervisor; (2) insubordinación; y (3) incumplir con las normas establecidas mediante ley, reglamentos y órdenes administrativas que rigen la CASP. Es menester destacar que, dentro de dichas ofensas, el Informe detalló seis (6) infracciones presuntamente cometidas por el Recurrente.

Así pues, se le advirtió al licenciado Brito de su derecho de solicitar la celebración de una vista informal, previo a la aplicación de la sanción, o de someter por escrito su versión de los hechos y/o para mostrar causa por la cual no se le debía imponer la medida disciplinaria. El 28 de julio de 2023, el licenciado Brito le cursó al Presidente de la CASP una comunicación en la que le notificó su intención de presentar por escrito su impugnación formal a la carta de intención que le fue notificada.

El 15 de agosto de 2023, el Recurrente presentó un escrito ante la CASP mediante el cual, entre otras cosas, impugnó la jurisdicción de la Recurrida de evaluar y establecer métricas de desempeño desde la aprobación de la Ley Núm. 8-2017, *infra*. Sostuvo que había sido víctima de un supuesto patrón de acoso laboral y daños y perjuicios por parte de varios funcionarios de la CASP. El 21 de agosto de 2023, la Comisionada Asociada de la CASP, Lcda. Maribel Rodríguez Ramos, fue designada como oficial para elaborar un informe con recomendaciones sobre las infracciones imputadas al licenciado Brito por parte de la Recurrida.

Entretanto, el 26 de septiembre de 2023, el licenciado Brito presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), una "**Demanda**" de interdicto preliminar y permanente y sentencia declaratoria en contra de la Recurrida, bajo el caso núm. SJ2023CV09115. En la misma, solicitó que se expidiera el remedio extraordinario para que se paralizara el procedimiento disciplinario iniciado por la CASP en contra del Recurrente y que desembocó en la presentación del recurso de epígrafe. Allí también reprodujo los planteamientos relativos a la falta de jurisdicción de la Recurrida para evaluar y establecer métricas de desempeño propias e imponer una medida disciplinaria en su contra. Su argumento se basó en que, al amparo de la Ley Núm. 8-2017, *infra*, era la Oficina de Administración y Transformación de los Recursos Humanos (en adelante, "OATRH") quien poseía la autoridad en ley para crear y diseñar métricas de productividad de los empleados del servicio público. Asimismo, el licenciado Brito solicitó la paralización del procedimiento disciplinario iniciado ante la CASP hasta que el TPI se expresara sobre la jurisdicción de la Recurrida.

Tras varios trámites procesales, el TPI dictó *Sentencia* el 3 de noviembre de 2023 mediante la cual concluyó que el licenciado Brito no logró satisfacer los elementos necesarios para establecer que se deba conceder un remedio interdictal ni declaratorio, dirigido a detener inmediatamente un procedimiento administrativo en curso. Ante tales circunstancias, desestimó el caso al entender que no era posible colegir

que se justificara preterir el procedimiento administrativo ante la CASP mediante el referido recurso extraordinario. Ello independientemente de los méritos que pudieran tener sus planteamientos con respecto al alcance de la Sección 6.6 de la Ley Núm. 8-2017, *infra*, y la validez sustantiva de la medida disciplinaria que la CASP propuso contra el Recurrente; ni en cuanto a la alegada parcialidad de la oficial examinadora asignada al caso.

Así las cosas, el 7 de noviembre de 2023, la oficial examinadora designada emitió un *Informe de la Oficial Examinadora*. El 1 de febrero de 2024, la CASP suscribió la determinación aquí impugnada, mediante la cual acogió las recomendaciones consignadas en el referido *Informe*. Allí se expresó que se había hallado que el licenciado Brito había infringido todas las ofensas descritas en la carta de intención y le notificó a éste la imposición de una amonestación formal consistente en una suspensión definitiva de empleo y sueldo por diez (10) días laborables desde el 17 al 28 de junio de 2024. Asimismo, se le apercibió al Recurrente de su derecho a presentar una revisión administrativa o apelación ante un Panel de Revisión de la CASP, en un término de quince (15) días, contados a partir de la notificación de dicha comunicación, de conformidad con el "Reglamento de Procedimientos para Atender Reclamaciones del Personal de la Comisión Apelativa del Servicio Público", *infra*.

Inconforme con dicha determinación, el licenciado Brito recurrió ante nos mediante el recurso de revisión judicial que nos ocupa y le imputó a la CASP la comisión de los siguientes errores:

> **PRIMER ERROR:**
> **La CASP abusó de discreción al imponer la severa sanción de la suspensión sin sueldo de 10 días a futuro sin haberse resuelto de forma final y firme una controversia jurisdiccional.**
>
> **SEGUNDO ERROR:**
> **Erró la Comisión Apelativa del Servicio Público al determinar que tenía jurisdicción para crear métricas de productividad y aplicar su Reglamento Disciplinario por el alegado incumplimiento de dichas métricas, usurpando la autoridad delegada a la Oficina de Administración y Transformación de los Recursos Humanos (OATRH).**
>
> **TERCER ERROR:**
> **Erró la Comisión Apelativa del Servicio Público al ordenar al Lcda. Aldo Brito Rodríguez comparecer ante**

**un panel interno para apelar su suspensión de 10 días por ser este uno ultra vires, contrario a LPAU y no haberse el demandante sometido a su jurisdicción**.

El 5 de marzo de 2024, emitimos *Resolución* mediante la cual se ordenó la paralización inmediata de los procedimientos ante la CASP y se le concedió a esta última hasta el 11 de marzo de 2024 para presentar su alegato en oposición al recurso.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

En nuestro ordenamiento jurídico, la doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial que se circunscribe a que los tribunales, discrecionalmente, se abstengan de revisar la actuación de una agencia hasta tanto la parte afectada por dicha actuación agote todos los remedios administrativos disponibles, de manera tal, que la determinación administrativa refleje la postura final de la agencia. Colón Rivera *et al.* v. ELA, 189 DPR 1033, 1057 (2013). De ordinario, su aplicación se realiza en aquellos casos en los cuales una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible. Procuradora Paciente v. MCS, 163 DPR 21, 35 (2004). La misma se invoca para cuestionar la acción judicial de un litigante que acudió originalmente a un procedimiento administrativo o era parte de éste y que luego recurrió al foro judicial, aunque aún tenía remedios administrativos disponibles. Mun. de Caguas v. AT&T, 154 DPR 401, 408 (2001).

La necesidad de agotar los remedios administrativos antes de acudir al foro judicial es un requisito jurisdiccional que impide la intervención judicial hasta tanto no hayan sido agotados todos los remedios administrativos disponibles al nivel de la agencia. Guzmán y otros v. ELA, 156 DPR 693, 714 (2002). Esto es así, pues la determinación administrativa es la que reflejará la postura final de la agencia. De ahí que sea de

particular importancia diferenciar los propósitos que persiguen las doctrinas de jurisdicción primaria y la de agotamiento de remedios administrativos. Sobre el particular, el Tribunal Supremo expresó lo siguiente:

> La doctrina de jurisdicción primaria no debe confundirse con la que requiere que se agoten los procedimientos administrativos antes de acudirse a los tribunales, aunque ambas son hermanas y persiguen el mismo fin: poner orden en la administración de la justicia y armonizar el funcionamiento de la rama judicial con el de su rama hermana, la ejecutiva. La doctrina que requiere que se agoten los procedimientos administrativos determina la etapa en la cual el litigante puede recurrir a los tribunales; la de la jurisdicción primaria determina qué organismo debe hacer la determinación inicial del asunto. E.L.A. v. 12,974.78 metros cuadrados, 90 DPR 506, 513 (1964).

De esta forma, la agencia administrativa puede: (1) desarrollar un historial completo del asunto; (2) utilizar el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y (3) aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos. AAA v. UIA, 200 DPR 903, 914 (2018). Por tanto, la doctrina de agotamiento de remedios administrativos no puede ser preterida, salvo que se configure alguna de las limitadas excepciones, a saber:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o **cuando sea un caso claro de falta de jurisdicción de la agencia**, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673 (énfasis suplido).

A luz de lo anterior, se ha establecido que "la parte que pretende acudir al foro judicial [debe] probar, **mediante hechos específicos y bien definidos, que se debe prescindir de los remedios administrativos**". Oficina Paciente v. MCS, 163 DPR 21, 36 (2004) (énfasis suplido). Esto, puesto que lo que pudiera resolver la agencia administrativa con relación a tales planteamientos constitucionales también estaría sujeto a ser revisado

en su momento por el Tribunal de Apelaciones, de conformidad con lo dispuesto en la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9655.

## B.

Como parte del poder de razón de estado, la Asamblea Legislativa aprobó la Ley Núm. 8-2017, *supra*, con el propósito de declarar un estado crítico económico y fiscal que requirió unos cambios en la administración de los recursos humanos de las agencias cubiertas por el estatuto. Así pues, se declara como política pública del Gobierno de Puerto Rico lo siguiente: (1) la centralización de la administración de los recursos humanos de todas las agencias e instrumentalidades del Gobierno Central; (2) que los empleados públicos sean empleados del Gobierno Central y no de las agencias; (3) la unificación de los planes de clasificación y retribución de la administración central; (4) el establecimiento de un sistema de evaluación de personal uniforme para los empleados públicos; y (5) la creación de un registro electrónico sobre los resultados de las evaluaciones y su cumplimiento, entre otras cosas. 3 LPRA sec. 1469a.

Por su parte, la Sección 4.3 (2) del Artículo 4 de la Ley Núm. 8-2017, *supra*, dispone las funciones y facultades de la OATRH, como ente en el cual se centralizaron las facultades del Sistema de Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico. Específicamente, se dispone que la OATRH tiene como función "[c]entralizar el sistema de administración de personal, eliminando de la categoría de administradores individuales a todas aquellas agencias e instrumentalidades públicas del Gobierno de Puerto Rico". 3 LPRA sec. 1470b (o).

A la luz de lo anterior, la Sección 6.6 de la Ley Núm. 8-2017, *supra*, dispone lo siguiente:

[…]

2. **La Oficina tendrá la obligación de crear y diseñar el sistema de evaluación de desempeño, productividad, ejecutorias y cumplimiento eficaz con los criterios establecidos, utilizando métricas cuantificables para los empleados. Las agencias e instrumentalidades vendrán obligadas a evaluar a sus empleados utilizando el**

**sistema de evaluación sobre desempeño que establezca la Oficina**.

3. **Cuando la conducta de un empleado no se ajuste a las normas y requerimientos establecidos, cada agencia deberá tomar las medidas correctivas o acciones disciplinarias necesarias y adecuadas**. Entre otros, se podrá considerar la amonestación verbal, reprimenda escrita, la suspensión de empleo y sueldo o la destitución.

4. La Autoridad Nominadora sólo podrá suspender de empleo y sueldo o destituir a cualquier empleado de carrera por justa causa, previa notificación de formulación de cargos por escrito y apercibimiento de su derecho a solicitar vista previa conforme a los procesos de disciplina progresiva como se establece en el reglamento.

5. **Las Autoridades Nominadoras tendrán la obligación de imponer la acción disciplinaria que proceda a cualquier funcionario o empleado que intencionalmente, por descuido o negligencia incumpla cualquiera de las disposiciones de esta Ley**.

[…]

8. Los deberes que a continuación se detallan constituirán **obligaciones mínimas esenciales requeridas a todo empleado**, por cuyo incumplimiento se deberán tomar acciones disciplinarias:

[…]

c. **Realizar eficientemente y con diligencia las tareas y funciones asignadas a su puesto y otras compatibles con éstas que se le asignen**.

d. **Acatar aquellas órdenes e instrucciones de sus supervisores compatibles con la autoridad delegada en éstos y con las funciones, actividades y objetivos de la agencia en donde trabaja**. 3 LPRA sec. 1472f (énfasis suplido).

De las transcritas disposiciones estatutarias se desprende que mediante la Ley Núm. 18-2017, se transfirió de las agencias a la OATRH la facultad de elaborar los sistemas de evaluación de desempeño, productividad, ejecutorias y cumplimiento eficaz con los criterios establecidos.

**III.**

Por ser de umbral que adjudiquemos los planteamientos jurisdiccionales prioritariamente, procedemos a evaluar el segundo señalamiento de error. Báez Figueroa v. Adm. Corrección, 209 DPR 288, 298 (2022).

En esencia, el Recurrente sostiene que la CASP incidió al imponer la medida disciplinaria en controversia, tras entender que podía crear

métricas de productividad, en contravención con las disposiciones de la Sección 6.6 (2) de la Ley Núm. 8-2017, *supra*. Así pues, y a la luz de ello, arguye que la Recurrida carecía de jurisdicción para iniciar el procedimiento administrativo que culminó en su suspensión de empleo y sueldo por diez (10) días laborables.

En oposición, la CASP arguye que debido a que la OATRH no ha establecido el sistema de evaluación de desempeño de los empleados de las agencias e instrumentalidades del Gobierno de Puerto Rico, procede que este Tribunal concluya que a la luz de las disposiciones de la Sección 6.6 (3) de la Ley Núm. 8-2017, *supra*, la Recurrida sí tenía autoridad en ley para imponer la medida disciplinaria mediante la comunicación del 1 de febrero de 2024. Veamos.

En primer término, debemos establecer que en el presente caso no existe controversia sobre el hecho de que aún está pendiente ante la CASP el proceso administrativo relacionado con la medida disciplinaria que se le impuso al licenciado Brito. Ahora bien, debemos determinar si como cuestión jurisdiccional, debemos intervenir en las controversias, como excepción a la doctrina de agotamiento de remedios administrativos o si, por el contrario, estamos ante un asunto de clara ausencia de autoridad en ley de la Recurrida que se justifique preterir el cauce administrativo iniciado. Veamos.

No existe contención alguna sobre el hecho de que la OATRH no ha establecido un sistema de evaluación del desempeño de los empleados de las agencias del Ejecutivo con métricas específicas, de conformidad con las funciones delegadas en el inciso 2 de la Sección 6.6 de la Ley Núm. 8-2017, *supra*. Ante esa realidad jurídica, la CASP sostiene que, a la luz de las disposiciones del inciso 3 de la propia Sección 6.6 del aludido estatuto, sí tenía autoridad en ley para imponerle al Recurrente la suspensión de empleo y sueldo de diez (10) días. Específicamente, la CASP alude a aquella parte de la Ley Núm. 8-2017, *supra*, que establece que "[c]uando la conducta de un empleado no se ajuste a las normas y requerimientos establecidos, cada agencia deberá tomar las medidas correctivas o

acciones disciplinarias necesarias y adecuadas. Entre otros, se podrá considerar la amonestación verbal, reprimenda escrita, la suspensión de empleo y sueldo o la destitución". 3 LPRA sec. 1472f. Es su contención, que la facultad de la CASP para iniciar acciones disciplinarias en virtud de su reglamento de conducta de los empleados de dicha dependencia no había sido limitada por la Ley Núm. 8-2017, *supra*, pues de la misma no surgía que los reglamentos internos de las agencias quedarían derogados.

Del examen detenido y sosegado de las disposiciones estatutarias en controversia, concluimos que estamos ante un panorama en el que no se puede determinar, sin ambages, que estamos ante un caso claro de falta de jurisdicción, como excepción a la doctrina de agotamiento de remedios administrativos. Nótese que el alcance del inciso 3 de la Sección 6.6 de la Ley Núm. 8-2017, *supra*, es uno extremadamente amplio que nos impide colegir a qué medidas correctivas o acciones disciplinarias se refiere.

Es decir, no surge expresamente si dichas medidas disciplinarias se refieren a las que por virtud del inciso 2 de dicha Sección la OATRH viene obligada a adoptar o si se relacionan a las normas internas que una agencia o dependencia del Gobierno de Puerto Rico puede instituir para evaluar el desempeño de sus empleados, en espera de que la OATRH apruebe las mismas. Tampoco estamos en posición de determinar si, por vía de la aprobación de la Ley Núm. 8-2017, *supra*, la Asamblea Legislativa tuvo la intención de derogar la totalidad de los reglamentos internos y de personal de las agencias. De igual manera, no estamos ante un escenario en el que podamos determinar, sin lugar a dudas, que el legislador pretendió limitar todos los procedimientos disciplinarios que pudieran iniciar las agencias contra empleados hasta tanto la OATRH creara y diseñara finalmente el sistema de evaluación al que alude el inciso 2 de la Sección 6.6 de la Ley Núm. 8-2017, *supra*.

En fin, es evidente que el panorama legal que nos presenta el Recurrente en su recurso no plantea un "caso claro" de falta de jurisdicción que justifique preterir el trámite administrativo, como excepción a la doctrina de agotamiento de remedios. De ahí que cobre vigencia la doctrina

constitucional de que a los tribunales no nos corresponde suplir omisiones al interpretar las leyes. "Se trata de un entendido básico: **Es simplemente incompatible con un gobierno democrático determinar el significado de una ley basándonos en lo que nos parece que el legislador quiso decir, en lugar de por lo que el legislador en efecto promulgó**." UPR v. Unión Oficiales UPR, 206 DPR 140, 152 (2021) (énfasis suplido).

> "El proceso legislativo[...] es demasiado complejo, demasiado dependiente de su curso y demasiado opaco para permitir a los jueces reconstruir si la legislatura hubiera resuelto alguna cuestión particular de manera diferente a la forma en que el texto estatutario claro resuelve esa cuestión". Íd. (citando con aprobación, J.F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387, 2410 (2003).

Entiéndase, indefectiblemente, estamos ante una controversia en la que es indispensable efectuar un análisis interpretativo de la Ley Núm. 8-2017, *supra*, con el objetivo de determinar si la CASP poseía jurisdicción para iniciar el proceso disciplinario contra el licenciado Brito. Esto, en su versión más simple, dista de lo que es un "caso claro de falta de jurisdicción" que justifique nuestra intervención a esta etapa del proceso cuando aún existen trámites pendientes ante la CASP.

Es decir, el licenciado Brito no ha presentado hechos específicos y bien definidos que justifiquen preterir el cauce administrativo detallado en la reglamentación de la CASP. La necesidad de agotar el remedio administrativo ante el Panel de Revisión, antes de acudir al foro judicial, es un requisito jurisdiccional que impide nuestra intervención hasta tanto no se haya culminado el proceso a nivel de la agencia. Guzmán y otros v. ELA, *supra*, pág. 714.

Esto es así, pues la determinación administrativa de dicho Panel reflejará la postura final de la agencia que producirá el derecho de la parte adversamente afectada de acudir ante este Tribunal de Apelaciones, de conformidad con lo dispuesto en la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9655. Este procedimiento incluye la posibilidad de cuestionar la imposición de cualquier medida disciplinaria que el Panel Revisor de la CASP entienda procedente en derecho y hasta impugnar la jurisdicción de dicho ente para iniciar y culminar el trámite administrativo.

Lo mismo ocurre con respecto al planteamiento de imparcialidad que el licenciado Brito arguye en su recurso sobre los componentes del Panel Revisor de la CASP. El petitorio del Recurrente implica efectuar determinaciones y adjudicaciones a destiempo, pues a esta etapa de los procedimientos este Tribunal sencillamente carece de jurisdicción. No obstante nuestra conclusión, una vez culmine el proceso administrativo iniciado ante la CASP, el licenciado Brito conservará su derecho a reproducir los planteamientos esgrimidos en el caso de autos, mediante un nuevo recurso de revisión judicial ante este Tribunal de Apelaciones, si así lo entiende pertinente.

Así pues, debido a nuestra determinación sobre el asunto jurisdiccional, se hace innecesario abordar el restante de los errores planteados en el recurso ante nos.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente *Sentencia*, se *desestima* el recurso por falta de jurisdicción, toda vez que el Recurrente no ha agotado todos los remedios administrativos disponibles ante la CASP y no se estableció que estuviéramos ante un caso claro de ausencia de jurisdicción que justificara preterir el trámite administrativo iniciado.

Se devuelve el caso ante dicha entidad para la continuación de los procedimientos consistentes con lo aquí resuelto.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones