Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ROBERTO ECHEVARRÍA PUPO T/C/C ROBERTO HECHAVARRIA PUPO<br><br>*Apelante*<br><br>v.<br><br>CAROLINA CATERING CORPORATION<br><br>*Apelado* | KLAN202500070 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>BY2024CV05180 (502)<br><br>Sobre:<br>Daños |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 17 de marzo de 2025.

Comparece Roberto Echevarría Pupo (señor Echevarría), miembro de la población correccional, para solicitarnos que revisemos y revoquemos la *Sentencia*[1] dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), emitida el 27 de septiembre de 2024 y notificada el 8 de octubre de 2024[2]. En dicha *Sentencia*, el TPI declaró NO HA LUGAR a la demanda[3] presentada, y ordenó su desestimación por falta de jurisdicción, por no haber agotado los remedios administrativos.

Por los fundamentos a darse a continuación, **revocamos** la *Sentencia* apelada.

## I.

De los autos se desprende que, para la fecha del 16 de julio de 2024, el señor Echevarría entregó una *Demanda Civil* por Daños y Perjuicios contra Carolina Catering Corporation al está no

---

[1] Entrada #4 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Íd.*
[3] Entrada #1 de SUMAC.

proveerle su dieta, baja en sodio, libre de irritantes y libre de lactosa, lo cual le estaba provocando daños a su salud. Por esta razón, el señor Echevarría solicitó una indemnización por daños y perjuicios por la cantidad de trescientos ochenta mil dólares ($380,000.00); además, adujo que los remedios administrativos son inadecuados.

Destacamos que, el ponche de la Secretaría del TPI en la *Demanda* es del 22 de agosto de 2024 y se le asignó el número de caso provisional FPCI2024-0076. Revisados los autos del presente caso ante el TPI, surge que dicho foro emitió una *Orden Interna*[4] el 28 de agosto de 2024, en la cual declaró Ha Lugar la solicitud del señor Echevarría para litigar como indigente (*In Forma Pauperis)*. El 5 de septiembre de 2024, la Secretaría notificó dicha *Orden Interna* y le asignó el número BY2024CV05180 en el SUMAC[5], en donde este cambio fue publicado.

En su *Sentencia,* el TPI expresó lo siguiente:

En el caso de las personas confinadas, deben agotar remedios ante la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación, en adelante "DCR". Dicha División fue creada como resultado de la estipulación estatal Ramón A. Martínez Torres y otros v. Rafael Hernández Colón, PE86-1787; PE86-1911; PE86-1925; PE86-1927; PE86-1950; PE86- 1397; PE81-1074; PE97-8; PE87-84; y PE87-135. A su vez, la División es parte del Programa de Remedios Administrativos, regulado mediante el "Reglamento para Atender las Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional", Núm. 8583 de 4 de mayo de 2015; y la Ley 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.

El referido Reglamento aplica, entre otros, a: "Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional". Sección 1(1)(a) del Reglamento Núm. 8583. El citado inciso aplica a agresiones físicas y verbales; propiedad de confinados; revisiones periódicas a la clasificación; traslados de emergencia; confinados a ser recluidos en el anexo de máxima seguridad; reclusión solitaria; plan de recreación, ejercicios y uso de biblioteca para fines recreativos; servicios médicos y religiosos y otros asuntos internos. De hecho, el Reglamento Núm. 8583 específicamente aplica a "actos e incidentes que afecten personalmente al confinado en su bienestar físico, mental, seguridad personal o en su plan institucional para minimizar las diferencias entre los confinados y el personal, para evitar o reducir la radicación

---

[4] Entrada #2 SUMAC.
[5] Entrada #3 SUMAC.

de pleitos en los Tribunales" y a "plantear asuntos de confinamientos". Id. (énfasis suplido).

Debemos señalar que el mero hecho de incluir una reclamación por daños y perjuicios no es una carta blanca para la preterición del trámite administrativo. Por el contrario, una vez se agote dicho trámite, se podría presentar la reclamación por daños, si procede. De otra parte, nos llama la atención el hecho de que en la demanda se alegó que Carolina Catering Corporation no está proveyendo la dieta desde marzo de 2023, mientras que en otro párrafo se indicó que la falta de la dieta ocurre alegadamente desde el 2022. Sin embargo, para ninguna de tales fechas se alegó haber agotado trámite administrativo alguno.

Insatisfecho con la determinación, y luego de varios problemas de ubicación de institución y de recibir adecuadamente la Sentencia, el 12 de noviembre de 2024, el señor Echevarría presentó reconsideración[6] y, el día después, el foro primario determinó nada que proveer.

Inconforme aun, presentó un recurso de *Apelación* ante este foro judicial para solicitar que continúen los procedimientos en el foro primario. Alegó como error, que no procede que se desestime la demanda incoada por no agotar los remedios administrativos; expuso que los remedios son fútiles.

**II.**

**-A-**

La doctrina de agotamiento de remedios administrativos es una norma de auto-limitación judicial que determina la etapa en que un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente ante un foro administrativo[7]. El propósito de la doctrina es determinar la etapa en la que el litigante puede acudir al tribunal, de manera que se evite una intervención judicial innecesaria y a destiempo, que interfiera con el cauce y desenlace final del proceso administrativo[8]. Así pues, mediante la mencionada doctrina, los tribunales discrecionalmente se abstienen

---

[6] Entrada #10 de SUMAC.
[7] *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 851 (2008).
[8] *AAA v. UIA*, 199 DPR 638, 656 (2018); *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004); *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 DPR 42, 49 (1993).

de revisar una actuación de una agencia hasta tanto la persona afectada agote todos los remedios administrativos, de manera que la decisión administrativa refleje la decisión final de la agencia[9].

La posposición de la intervención judicial permite que la agencia desarrolle un historial completo del asunto ante su consideración, fomenta que ese organismo utilice su conocimiento especializado para adoptar las medidas correspondientes conforme a la política pública y aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos[10]. También facilita la revisión judicial, asegurando que los tribunales tengan información más precisa sobre los fundamentos de la actuación gubernamental[11].

Como regla general, el agotamiento de remedios se invoca cuando una parte ante el foro administrativo solicita la intervención judicial antes de consumar el procedimiento administrativo[12]. Esto es, cuando una parte que instó o tiene instada una acción ante una agencia u organismo administrativo, acude ante el Tribunal sin antes haber completado el trámite administrativo disponible[13]. De manera que, "el agotamiento de remedios presupone la existencia de un procedimiento administrativo que comenzó pero que no finalizó", debido a que la parte concernida recurrió al foro judicial previo a que dicho procedimiento culminara[14].

En consonancia con lo anteriormente expuesto, la sección 1.2 de la LPAUG, *supra*, dispone que el procedimiento administrativo supone, entre otros, la adjudicación formal de toda controversia o

---

[9] *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 DPR 906, 916 (2001); *Guadalupe v. Saldaña, Pres. U.P.R.*, supra.

[10] *Procuradora Paciente v. MCS*, supra, citando a *Rivera v. E.L.A.*, 121 DPR 582, 595 (1988); *Guadalupe v. Saldaña, Pres. U.P.R.*, supra.

[11] *Rivera v. E.L.A.*, supra.

[12] *S.L.G. Flores, Jiménez v Colberg*, supra.

[13] *Ortiz v. Panel F.E.I.*, 155 DPR 219, 242 (2001).

[14] *Asoc. de Pesc. Pta. Figueras v. Pto. del Rey*, supra, pág. 918, citando a *Mun. de Caguas v. AT&T*, 154 DPR 401, 408-409 (2001).

planteamiento ante la consideración de una agencia[15]. Al mismo tiempo, define la adjudicación como el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte[16].

**-B-**

En nuestro ordenamiento jurídico la parte indispensable es aquella que tenga un interés común, "sin cuya presencia no pueda adjudicarse la controversia"[17]. Entiéndase que esta es una parte de la cual no se puede prescindir, y cuyo interés en el asunto es de tal magnitud que no puede dictarse un decreto final sin lesionar y afectar sustancialmente sus derechos, o sin permitir que la controversia quede, en tal estado, que su determinación final sea inconsistente con la equidad[18]. Así, pues, para que una parte sea indispensable, será necesario que su interés sea real e inmediato. De manera que su interés en el pleito no puede ser una mera especulación o un interés futuro[19].

En mérito de lo anterior, resulta importante determinar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente[20]. Por ello, si la persona que se considera parte indispensable no está presente en el litigio, se trasgrede su debido proceso de ley[21]. A tenor, nuestro Alto Foro ha expresado que "lo verdaderamente trascendental es que la ausencia de parte indispensable priva de jurisdicción al tribunal[22]. Conforme a ello, la sentencia que se emita en ausencia de parte indispensable es nula[23].

---

[15] 3 LPRA sec. 9603(l).
[16] 3 LPRA sec. 9603(b); *Crespo Claudio v. O.E.G.*, *supra*, pág. 816.
[17] Regla 16 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1.
[18] *FCPR v. ELA et al.*, 211 DPR 521, 531 (2023), citando a *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014); *García Colón et al. v. Sucn. González*, 178 DPR 527, 548 (2010).
[19] *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007).
[20] *Romero v. S.L.G. Reyes*, 164 DPR 721, 733 (2005).
[21] *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 479 (2019).
[22] *FCPR v. ELA et al.*, *supra*, a la pág. 532; *García Colón et al. v. Sucn. González*, *supra*, a la pág. 550.
[23] *Íd.*

Acorde con lo antes expuesto, la omisión o no acumulación de partes indispensables constituye una defensa para la parte contra quien se reclama y puede ser fundamento para una moción de desestimación[24]. Sin embargo, lo anterior no constituye un impedimento para que el Tribunal conceda oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando pueda adquirir jurisdicción sobre esta[25].

Consecuentemente, de tal arraigo es el interés de proteger a las partes indispensables que la no inclusión en el pleito de una parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso[26].

En lo que a nosotros respecta, es menester acentuar que los tribunales apelativos pueden levantar *motu proprio* la falta de parte indispensable, debido a que ésta incide sobre la jurisdicción del tribunal[27]. No obstante, dicha desestimación no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada[28].

**III.**

Como cuestión de umbral, nos corresponde determinar si, a la luz de la normativa antes expuesta, el foro primario incide al no asumir jurisdicción en el caso de autos.

En nuestro ordenamiento jurídico, es norma reiterada que la ley habilitadora de una agencia es el mecanismo legal que le delega a esta los poderes necesarios para actuar de conformidad con el propósito legislativo[29]. A esos efectos, una agencia administrativa solo puede llevar a cabo las funciones que le han encomendado legislativamente y aquellas que surgen de su actividad o encomienda

---

[24] Regla 10. 2(6) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.
[25] *Mun. De San Juan v. Bosque Real S.E.*, 158 DPR 743, 757 (2003); *Sánchez v. Sánchez*, 154 DPR 645, 679 (2001).
[26] *Pérez Rosa v. Morales Rosado, supra*, a la pág. 223.
[27] *Íd.,* a las págs. 223-224.
[28] *Íd.,* a la pág. 224.
[29] *Ameiro González v. Pinacle Real Estate*, 173 DPR 363, 371 (2008).

principal[30]. El Plan de Reorganización[31] del DCR no le delega la función a dicha agencia de conceder indemnización por daños y perjuicios.

Acorde con lo anterior, cuando el foro administrativo no está facultado por ley para conceder indemnización por los daños y perjuicios sufridos y reclamados por una persona como resultado de una actuación culposa o negligente de otra, el reclamante debe acudir al foro judicial con su acción civil extracontractual[32].

Recientemente nuestro Tribunal Supremo resolvió que, el Departamento de Corrección y Rehabilitación no está facultado para conceder una indemnización por daños y perjuicios, por lo que una parte perjudicada puede acudir directamente ante el foro judicial con su acción, es *el Tribunal de Primera Instancia el foro adecuado para atender su reclamo*[33].

Entendemos que, al haberse instado esta acción contra un ente privado, en la cual se alega la causal de daños y perjuicios, el TPI incidió al emitir una sentencia por desestimación por no agotar los remedios administrativos, el dictamen contraviene la normativa establecida por el Tribunal Supremo. Lo cierto es que, el foro primario no estaba impedido de pasar juicio sobre el escrito inicial y determinar si el Departamento de Corrección y Rehabilitación es una parte indispensable, y si procede la continuación de los procedimientos. En virtud de ello, nos corresponde revocar el dictamen apelado.

---

[30] *Íd.*
[31] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, 3 LPRA, Ap. XVIII, *et. seq.*
[32] *Guzmán Cotto v. ELA, supra.*
[33] *Muñoz Barrientos v ELA*, 212 DPR 714, 731 (2023).

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte de este dictamen, ***revocamos*** la Sentencia apelada. Devolvemos el caso al foro primario para la continuación de los procedimientos.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
